IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GUIVIAM RODARTE, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | C.A. No. __5:17-cv-43_____ |
| | § | |
| STANDARD INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## NOTICE OF REMOVAL

Defendant Standard Insurance Company ("Standard"), for the purpose only of removing this case to the United States District Court for the Western District of Texas, San Antonio Division, states:

1.  **State Court Action.**  Plaintiff Guiviam Rodarte ("Plaintiff") filed this action in the 288th District Court in Bexar County, Texas, Cause No. 2016-CI-21057, on December 8, 2016.  Plaintiff asserts claims against Standard for breach of contract, violations of the Texas Insurance Code and Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), breach of the covenant of good faith and fair dealing, and for money damages based on the alleged improper denial of benefits under a long-term disability ("LTD") insurance policy ("Policy") issued by Standard.

2.  **Diversity of Citizenship.**  The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Specifically, Plaintiff was a citizen and resident of the state of Texas at the time this action was filed and remains a citizen and resident of Texas as of the date of this removal. [Petition, p. 1.]  Standard is an Oregon corporation with its principal office and place of business in Portland, Oregon.  [*See* Petition, p. 2.]  Accordingly,

Standard was a citizen and resident of Oregon at the time this action was filed and remains a citizen and resident of Oregon as of the date of this removal. Accordingly, complete diversity of citizenship exists between Plaintiff, on the one hand, and Standard, on the other hand.

3.    **Amount in Controversy.**  Further, the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. First and foremost, Plaintiff explicitly admits in the Petition that Plaintiff seeks monetary relief over $200,000.00. [Petition, ¶ 2.] Among other things, Plaintiff seeks to recover unpaid LTD benefits and interest. [Petition, ¶ 85.] Plaintiff also seeks treble and exemplary damages in addition to actual damages. [Petition, ¶ 87.] *See Dow Agroscience L.L.C. v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003) (claim for $18,242.50, trebled under DTPA, plus attorneys' fees, meets the $75,000.00 jurisdictional threshold), *vacated on other grounds*, 544 U.S. 531 (2005); *St. Paul Reinsurance Co. v Greenberg*, 134 F.3d 1250; *Graham v. Henegar*, 640 F.2d 732, 735-36 n.9 (5th Cir. 1981) (attorneys' fees must be included in calculating amount in controversy); *Cross v. Bell Helmets, USA*, 927 F. Supp. 209, 212-213 (E.D. Tex. 1996). These facts combined sufficiently establish that the amount in controversy in this case exceeds the jurisdictional minimum requirement for diversity jurisdiction.

4.    **Removal is Proper.**  The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and this action is between citizens of different states. Accordingly, this action may be removed pursuant to 28 U.S.C. § 1441. In addition, removal is timely under 28 U.S.C. § 1446(b) as Standard accepted service on December 27, 2016 through a

Rule 11 Agreement with Plaintiff's counsel, which was the first time that Standard received, through service or otherwise, a copy of the initial pleading setting forth the claim for relief upon which this action is based.

5.      **State Court Documents Attached.**  Pursuant to the Federal Rules of Civil Procedure, a certified copy of the state court docket sheet and all documents filed in the state court action, separately attached and arranged in chronological order, are attached as Exhibit A.  These documents constitute the only pleadings, process, or orders filed in the state court or received by Standard.  A list of the parties and counsel is also attached as Exhibit B.  Finally, pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal shall be provided to all adverse parties and filed with the clerk of the state court.

## RELIEF REQUESTED

Standard respectfully requests that the United States District Court for the Western District of Texas, San Antonio Division, accept this Notice of Removal and that it assume jurisdiction of this cause and grant such other and further relief as may be necessary.

Respectfully submitted,


By:   s/ Ryan K. McComber
      Ryan K. McComber
      State Bar No. 24041428
      ryan.mccomber@figdav.com
      Nicole H. Muñoz
      State Bar No. 24098153
      nicole.munoz@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas  75202
Tel:  (214) 939-2000
Fax:  (214) 939-2090

ATTORNEYS FOR DEFENDANT
STANDARD INSURANCE
COMPANY


## CERTIFICATE OF SERVICE

I certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system and all others will be notified via certified mail, return receipt requested on this 23rd day of January, 2017.


      /s/ Ryan K. McComber
     Ryan K. McComber

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GUIVIAM RODARTE, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. <u>5:17-cv-43</u> |
| | § | |
| STANDARD INSURANCE COMPANY, | § | |
| | § | |
| | § | |
|     Defendant | § | |

## INDEX OF STATE COURT DOCUMENTS

1.      Copy of the Civil Docket Sheet dated 01/18/17;

2.      Plaintiff's Original Petition, filed 12/05/16;

3.      Rule 11 Agreement Accepting Service on 12/27/16; and

4.      Defendant's Original Answer, filed 01/23/17.

Respectfully submitted,


By:   s/ Ryan K. McComber
      Ryan K. McComber
      State Bar No. 24041428
      ryan.mccomber@figdav.com
      Nicole H. Muñoz
      State Bar No. 24098153
      nicole.munoz@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas  75202
Tel:  (214) 939-2000
Fax:  (214) 939-2090

ATTORNEYS FOR DEFENDANT
STANDARD INSURANCE
COMPANY


## CERTIFICATE OF SERVICE

     I certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system and all others will be notified via certified mail, return receipt requested on this 23rd day of January, 2017.


     s/Ryan K. McComber
     Ryan K. McComber



GERARD C. RICKHOFF      DONNA KAY McKINNEY

## COUNTY CLERK & DISTRICT CLERK
### COURT RECORDS SEARCH

---

# Case #2016CI21057

**Name**: GUIVIAM RODARTE

**Date Filed** : 12/08/2016

**Case Status** : PENDING

**Litigant Type** : PLAINTIFF

**Court** : 288

**Docket Type** : INSURANCE

**Business Name** :

**Style** : GUIVIAM RODARTE

**Style (2)** : vs STANDARD INSURANCE COMPANY

---

# Case History

*Currently viewing 1 through 5 of 5 records*

| Sequence | Date Filed | Description |
|----------|-----------|-------------|
| P00004 | 12/30/2016 | LETTER TO DISTRICT CLERK<br>FR:HORTENCIA G VASQUEZ RE:MAILING<br>CITATION |
| S00001 | 12/12/2016 | CITATION<br>STANDARD INSURANCE COMPANY<br>ISSUED: 12/12/2016 |
| P00003 | 12/8/2016 | SERVICE ASSIGNED TO CLERK 2 |
| P00002 | 12/8/2016 | JURY DEMAND JURY FEE PAID |
| P00001 | 12/8/2016 | PETITION<br>WITH JURY DEMAND |

cit pps/sauz ...,

k
juez

CAUSE NO 2016CI21057

| | | |
|---|---|---|
| GUIVIAM RODARTE, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | 288th DISTRICT COURT |
| VS. | § | |
| | § | |
| STANDARD INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendant. | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

Guiviam Rodarte ("Plaintiff" or "Rodarte") files this Original Petition against Standard

Insurance Company ("Standard") and shows the Court as follows:

### A.     DISCOVERY-CONTROL PLAN

1.      Plaintiff intends to conduct discovery under Level 3 of the Texas Rules of Civil

Procedure. This case involves complex issues and will require extensive recovery. Therefore,

Plaintiff asks the Court to order that discovery be conducted in accordance with a discovery

control plan tailored to the particular circumstances of this suit. Plaintiff affirmatively pleads that

this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169

because Plaintiff seeks monetary relief over $100,000.

### B.     RELIEF

2.      Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000. Tex.

R. Civ. P. 47(c).

### C.     PARTIES

3.      Plaintiff, Guiviam Rodarte,[1] is an individual and resident of Bexar County, Texas.

---

[1] At the time Standard was handling her claim for benefits, Rodarte used the last name "Lozano," but has since changed her name.

4.     Standard is an insurance company licensed to do business in Texas, with its principal place of business in Portland, Oregon. Standard can be served with citation by serving its Attorney for Service, C T Corporation System, by certified mail, return receipt requested, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

### D.     JURISDICTION

5.     The Court has subject matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

### E.     VENUE

6.     Venue is mandatory and proper in this district because all or a substantial part of the events or omissions giving rise to the claim occurred in Bexar County.

### F.     CONDITIONS PRECEDENT

7.     All conditions precedent to recovery have been performed, waived, or have occurred.

### G.     FACTUAL BACKGROUND

8.     Rodarte was employed as a free and reduced lunch program advisor—a light duty occupation—for the Northside Independent School District ("NISD") in San Antonio.

9.     While employed by NISD, Rodarte enrolled in an employee benefit plan that provided group long-term disability benefits ("LTD Plan") and was insured by a long-term disability policy (the "Policy") issued by Standard.

10.     In order to induce Rodarte to enroll in the LTD Plan, Standard represented she would receive monthly LTD benefits as long as she met the definition of "Disability" under the Policy. It further represented that its claims department gave disability claimants the benefit of the doubt, investigated and handled claims fairly, reasonably and in good faith, made timely claims decisions, and carefully considered all evidence relating to a claimant's disability.

2

11.    The LTD Policy provided the following definition of "Disability" for the first 24-months of the payment of LTD benefits:

> During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.
>
> You are Disabled from your Own Occupation if, as a result of Physical Disease...:
>
> 1.    You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and
>
> 2.    You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

12.    "Own Occupation" was defined as "any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins.  In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy."

13.    After the payment of 24 months of LTD benefits, the Policy changed the definition of Disability to apply to "Any Occupation," rather than a claimant's "Own Occupation:"

> You are disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.
>
> Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience, which is available at one or more locations in the national economy and in which you can be expected to earn at least 60% of your Indexed Predisability Earnings within twelve months

3

following your return to work, regardless of whether you are
working in that or any other occupation.

14.     The Policy also provided that in order to be eligible for benefits, a claimant "must

be under the ongoing care of a Physician in the appropriate specialty ... No LTD Benefits will be

paid for any period of Disability when you are not under the care of a Physician in the

appropriate specialty as determined by us."

15.     In addition, the Policy provided that there was a 24-month limited LTD pay

period for disabilities caused by certain conditions, including "Mental Disorders," which were

defined as follows:

>       Mental Disorder means any mental, emotional, behavioral,
>       psychological, personality, cognitive, mood or stress-related
>       abnormality, disorder, disturbance, or dysfunction, or syndrome
>       regardless of cause ... or the presence of physical symptoms.
>       Mental Disorder includes, but is not limited to, bipolar affective
>       disorder, organic brain syndrome, schizophrenia, psychotic illness,
>       manic depressive disorder, depression and depressive disorders,
>       anxiety and anxiety disorders.

16.     The Policy provided the following rules for disabilities caused by

"Mental Disorders:"

>       1.      If you are disabled as a result of a Mental Disorder ... for
>               which payment of LTD benefits is subject to a limited pay
>               period, and at the same time are Disabled as the result of a
>               Physical Disease, Injury or Pregnancy that is not subject to
>               such limitation, LTD Benefits will be payable first for
>               conditions that are subject to the limitation.
>
>       2.      No LTD benefits will be payable after the end of the
>               limited pay period unless on that date you continue to be
>               Disabled as a result of Physical Disease, Injury or
>               Pregnancy for which payment of LTD Benefits is not
>               limited.

17.     Rodarte initially ceased working for NISD on December 20, 2013 as a result of a

knee injury she sustained from a fall at work in October 2013.

4

18.     Rodarte applied for benefits under the LTD Plan with Standard on or about December 18, 2013.  As part of her application, she submitted an Attending Physician Statement ("APS") completed by her orthopedic surgeon who stated he had diagnosed Rodarte with a medial meniscus tear for which she would have surgery in January 2014.

19.     At the time Rodarte first applied for LTD benefits, she was receiving worker's compensation benefits because her injury occurred at work.  Therefore, in accordance with the terms of the Policy that excluded coverage for LTD while a claimant was receiving worker's compensation benefits, Standard notified Rodarte on January 22, 2014 her claim for LTD benefits had been denied.

20.     Rodarte underwent outpatient surgery on her knee as planned, but during the surgery she suffered significant complications, including an extreme negative reaction to anesthesia causing paralysis and loss of speech, and as a result, she was intubated and hospitalized for several days.

21.     Rodarte attempted to return to work at NISD after her surgery, but due to chronic pain, fatigue and muscle weakness caused by newly-diagnosed fibromyalgia and polyarthralgia, as well as burning and numbness in her extremities, daily severe headaches, cognitive difficulties including an inability to concentrate and memory problems, and emotional difficulties due to depression and anxiety, she ceased working on May 8, 2014.

22.     Rodarte reapplied for LTD benefits on July 15, 2014.  As part of her application, she submitted an APS completed by Dr. Mrisa Sahai, her rheumatologist, who stated Rodarte suffered from severe generalized pain in her joints and body as a result of polyarthralgia.

23.     Standard assigned Rodarte's claim to Jeremy Platt, a disability benefits analyst.

24.     As part of his investigation of Rodarte's eligibility for benefits, Platt first referred her claim for a review by Bob Black, a vocational case manager, to determine the material duties of her occupation and its physical demand level.  Black reviewed NISD's job description for Rodarte's free and reduced lunch program advisor position and concluded in his August 8, 2014 report the most similar occupation in the national economy was the position of "administrative clerk" contained in the Department of Labor's Dictionary of Occupational Titles—a light duty physical demand level occupation.[2]

25.     Platt also asked Rodarte to sign an authorization giving him permission to obtain her medical records.  After obtaining her authorization, he requested Rodarte's records from her medical providers through ReleasePoint, a third-party medical record retrieval service. ReleasePoint caused a substantial delay in the gathering of Rodarte's records.

26.     After approximately two months, Platt finally received Rodarte's records, which included, but was not limited to, office visit notes from Dr. Mrisa Sahai, her rheumatologist, session notes from her therapist, Andrea Alvarez, and office visit notes from Dr. Mariana Munante, her family practitioner.

27.     Dr. Sahai's records revealed Rodarte suffered from continuous burning and throbbing pain in her arms and legs, increased pain upon prolonged sitting, standing and walking, and continued pain in her neck and back from her fall at work.  Upon physical examination, Dr. Sahai noted Rodarte had tenderness in her paracervical spine, tenderness in the proximal interphalangeal and metacophalangeal joints of her hands, diffuse tenderness in both dorsal hands, tenderness in her right knee, muscle spasms in her paralumbar spine, and 18 out of

---

[2] A light duty occupation requires lifting and carrying up to 20 pounds occasionally ("occasionally" means up to 1/3 of an 8-hour work day), lifting and carrying up to 10 pounds frequently ("frequently" means 1/3 to 2/3 of a work day), standing, walking, pushing or pulling for most of the work day, and fingering and handling (such as using a computer keyboard or a phone) frequently.

18 fibromyalgia tender points. Lab tests ordered by Dr. Sahai showed Rodarte had a high rheumatoid factor, which is consistent with a diagnosis of rheumatoid arthritis ("RA"), positive SSA, SSB, anti-Smith, and DNA DS antibodies, which are consistent with the diagnosis of auto-immune disorders such as RA, Sjogren's syndrome and lupus, and a Vitamin D deficiency, which can cause cognitive impairment.

28.     Ms. Alvarez's records showed Rodarte suffered from frequent suicidal thoughts, feelings of worthlessness and hopelessness, acute insomnia, cognitive difficulties including memory loss and an inability to focus on tasks, and chronic daily pain.

29.     Dr. Munante's records revealed she was taking Ambien for insomnia, diazepam (generic Valium) for anxiety, gabapentin for parasthesia, Lexapro for depression and generalized anxiety disorder, quetiapine fumarate[3] for severe depression, and hydrocodone and Norco for pain.

30.     After obtaining Rodarte's records, Platt referred her claim for a medical record review by Dr. Shirley Ingram, a rheumatologist who was an employee of Standard, to determine the extent of her physical restrictions and limitations, whether her reported diagnoses and symptoms were supported by her medical records, and whether her medical conditions prevented her from working at a "sedentary level on a full-time basis." Platt fraudulently misrepresented in his written referral that Rodarte's own occupation was sedentary,[4] when in fact Black had determined it was a light-duty physical demand occupation.

31.     Dr. Ingram issued a September 29, 2014 report in which she conceded Rodarte's medical records contained objective evidence supporting diagnoses of rheumatoid arthritis,

---

[3] This is the generic version of the drug Seroquel, an antipsychotic medicine occasionally used to treat major depressive disorder.
[4] A sedentary occupation requires sitting for most of a work day, sitting and standing only occasionally, lifting and carrying only up to 10 pounds, and fingering and handling frequently.

chronic pain syndrome and fibromyalgia and her symptoms resulting from these physical conditions. Despite these admissions, Dr. Ingram speciously concluded there was a "significant probability" Rodarte had "a psychosomatic condition and/or malingering." Based on her unfounded conclusion, Dr. Ingram erroneously determined Rodarte had no physical limitations and restrictions preventing her from performing a full-time "sedentary" job. Due to Standard's false characterization of Rodarte's own occupation as sedentary rather than light-duty, Dr. Ingram never considered whether Rodarte could perform her own light-duty occupation on a full-time basis.

32.    Platt also referred Rodarte's claim for a review by Laura Nelson, one of its mental health case managers who was a qualified mental health professional and not a psychiatrist, to determine the extent of her mental restrictions and limitations as a result of her depression and anxiety. Once again, Platt fraudulently misrepresented in his written referral that Rodarte's own occupation was sedentary rather than light-duty.

33.    Nelson conducted telephone interviews with Rodarte and her therapist Ms. Alvarez and completed a report dated October 1, 2014. Rodarte advised Nelson during their call that her depression and anxiety increased exponentially when she suffered complications after her surgery and as a result she was suffering from frequent suicidal thoughts, feelings of worthlessness and hopelessness, chronic, severe insomnia, cognitive difficulties including memory loss and an inability to focus on tasks, and chronic daily pain. After their conversation, Nelson stated that although Rodarte seemed markedly anxious, her emotional state was labile, and she became very tearful when she described the trauma she suffered after her knee surgery, it was her impression that Rodarte was strongly motivated to return to work when her physical and mental conditions improved.

8

34.     Alvarez advised Nelson during their call that Rodarte was suffering from frequent episodes of severe anxiety and depression, intense feelings of guilt and worthlessness, continuous suicidal thoughts, and that she displayed symptoms of memory impairment. As a result, Alvarez emphasized to Nelson she did not believe Rodarte could return to work. She also advised Rodarte had been recently forced to cut down on the number of their therapy sessions due to financial problems, loss of her health insurance coverage caused by NISD's termination of her employment, and frequent episodes of severe pain.

35.     Based on her investigation, Nelson opined in her report that Rodarte's physical and psychiatric symptoms would impede her ability to multi-task and perform the duties of her job. Nelson recommended Standard reopen its investigation of Rodarte's claim if she had not returned to work by December 1, 2014.

36.     Based on Nelson's report, Platt notified Rodarte by letter on October 6, 2014 that Standard had approved her claim for LTD benefits effective May 11, 2014. Platt also sent a second letter in which he advised Rodarte that because Standard had concluded her disability was caused in part by one or more mental disorders. it intended to apply the 24-month "mental disorders" limitation to her claim.

37.     Platt failed to notify Rodarte in either letter that Standard had approved her claim for LTD benefits based on its determination she was disabled solely due to her mental disorders and not from physical symptoms stemming from her diagnoses of rheumatoid arthritis, polyarthralgia and fibromyalgia.

38.     In early December 2014, pursuant to Nelson's recommendation, Platt commenced an investigation to determine if Rodarte continued to be disabled. As part of his investigation, he requested Rodarte's medical records only from Ms. Alvarez and not from any of her other

9

medical providers. He also did not ask Rodarte to submit any additional medical records herself or conduct an interview with her to inquire about her psychiatric or physical symptoms stemming from her various diagnoses.

39.     Once Platt received the records from Ms. Alvarez, he referred Rodarte's claim to a D.O., a doctor of osteopathic medicine and not to a medical doctor or psychiatrist, for a medical records review. In his written referral, he noted Rodarte was under the care of a physician due to a diagnosis of fibromyalgia and resulting symptoms of head-to-toe chronic pain, severe fatigue, and cognitive problems.[5] Platt also again fraudulently misrepresented Rodarte's own occupation was sedentary rather than light-duty, he only provided the updated records from Ms. Alvarez with his referral, and he asked the D.O. to comment on Rodarte's restrictions and limitations and her ability to perform a full-time "sedentary" job. Cheryn Grant, D.O. was assigned to perform the review .

40.     In her January 9, 2015 report, Dr. Grant concluded, based solely on her review of Ms. Alvarez's notes, that Rodarte's psychiatric symptoms had improved and she had no restrictions and limitations preventing her from returning to full-time work. Dr. Grant made no attempt to contact Ms. Alvarez or any of Rodarte's treating physicians and she failed to consider the information Platt gave her in his written referral regarding Rodarte's physical symptoms.

41.     Based entirely on Dr. Grant's very limited medical records review, Platt concluded Rodarte was no longer disabled and therefore terminated her LTD benefits.

42.     In his January 21, 2015 letter to Rodarte advising her of his decision, he explained the bases for his decision were Dr. Grant's report, the vocational analysis he claimed concluded Rodarte's own occupation was sedentary rather than light-duty, Ms.

---

[5] "Brain fog" is a common symptom among patients diagnosed with auto-immune disorders such as RA and fibromyalgia and it can impair mental function by causing memory problems, an inability to concentrate or think clearly, and mental fatigue.

Alvarez's limited records purportedly showing Rodarte's psychiatric condition had improved, and her purported lack of any physical restrictions and limitations.

43.      Rodarte sent Standard a letter on February 17, 2015 to appeal the termination of her benefits. In the letter, Rodarte notified Standard both her mental and physical symptoms had worsened and she had enrolled in an intensive outpatient therapy program ("IOP") at Nix Behavioral Health Center in San Antonio.

44.      Standard assigned Rodarte's appeal to Michelle Pavick, an appeals specialist. Pavick requested Rodarte's updated therapy session records from Alvarez, but did not request any of Rodarte's medical records from any of her treating physicians or from the IOP program at Nix. Given the information Rodarte provided regarding her worsening physical symptoms, Pavick's failure to investigate whether her physical diagnoses rendered her disabled was a glaring omission.

45.      Further, despite the fact Rodarte was suffering from severe anxiety and depression and had enrolled in the IOP, Pavick told Rodarte it was her burden to supply Standard with her medical records, even though Platt had previously requested her records himself when he handled her claim.

46.      Pavick also referred Rodarte's claim for a medical records peer review by a psychiatrist on March 24, 2016. Dr. Esther Gwinnell, a psychiatrist, conducted the review, which included a review of Laura Nelson's previous report, session notes from Rodarte's sessions with Ms. Alvarez, and a telephone conference with Ms. Alvarez.

47.      Dr. Gwinnell submitted a report to Pavick dated April 29, 2015. Based on her review of the therapy notes, Dr. Gwinnell noted Rodarte had expressed some improvement in her symptoms during therapy sessions in October and November 2014.

Dr. Gwinnell also reported that during her phone call with Ms. Alvarez, she expressed the opinion that Rodarte could not return to work in her own occupation due to flare-ups of fibromyalgia, insomnia, severe, chronic pain, and memory problems. Ms. Alvarez also told Dr. Gwinnell Rodarte had been forced to stop therapy due to a loss of her health insurance and financial difficulties.

48.     Although Dr. Gwinnell conceded the medical evidence showed Rodarte was suffering from "substantial anxiety and depression" and she likely became "impaired by her psychiatric symptoms" in January 2015, she concluded she did not have enough medical documentation to determine whether Rodarte was disabled. She recommended Standard obtain Rodarte's records from Nix. Dr. Gwinnell completely failed to consider Ms. Alvarez's comments regarding Rodarte's symptoms arising from her rheumatological conditions.

49.     On May 6, 2015, Pavick sent Rodarte a letter explaining her claim had been submitted to a psychiatrist for a medical records review, but the psychiatrist concluded there was not enough medical evidence in her file to find her disabled. Pavick told Rodarte she needed to send her copies of the medical records from the IOP or her appeal would be closed. And, despite Ms. Alvarez's comments regarding Rodarte's worsening physical symptoms, Pavick never investigated whether those symptoms prevented her from returning to work.

50.     Rodarte sent Pavick the IOP records on May 15, 2015. The records indicated Rodarte was suffering from feelings of guilt, pain, anger and fear, she was experiencing frequent panic attacks, and she still great difficulty with her memory and focus.

12

51.     After receiving the records, Pavick once again referred Rodarte's claim to Dr. Gwinnell.

52.     On June 11, 2015, Dr. Gwinnell submitted her final report to Standard. Although she reviewed the IOP notes that indicated Rodarte was still suffering from symptoms stemming from her severe anxiety and depression, Dr. Gwinnell described the records as only indicating Rodarte was sometimes "tearful" during IOP sessions and they therefore did not support the presence of any psychiatric symptoms that would prevent her from performing her own occupation. Once again, Dr. Gwinnell made no mention of Rodarte's physical symptoms in her explanation for her conclusions.

53.     After receiving Dr. Gwinnell's report, Pavick sent a letter to Rodarte on June 17, 2015 advising of her decision to uphold the termination of her LTD benefits. She explained she only considered Rodarte's disability stemming from her depression and anxiety and not from any of her medical conditions causing her physical restrictions or limitations. Despite the fact Rodarte's depression and anxiety became so severe in March 2015 that she enrolled in the IOP, Pavick determined she was no longer disabled as of November 6, 2014 because Rodarte's records from a few therapy sessions with Alvarez in October and November 2014 indicated her depression and anxiety had somewhat improved.

54.     On June 18, 2015, Pavick told Rodarte during a phone call she upheld the termination of her LTD benefits due to a lack of medical records supporting Rodarte's disability. Rodarte attempted to explain her financial situation was affecting her ability to obtain medical treatment as often as she needed, but Pavick rudely told her that was irrelevant.

13

55.     Pavick also told Rodarte she would not consider letters from any of her treating physicians regarding her restrictions and limitations and her disability, APSs completed by any of her treating physicians, or any illegible office visit notes from her treating physicians if Rodarte sent this type of documentation.  Despite Pavick's refusal to consider these types of documents, the LTD Policy only requires "written proof" of disability; it does not define "written proof" or describe the documents that constitute "written proof."

56.     Rodarte continues to have both physical and mental restrictions and limitations that prevent her from performing her own light-duty occupation as well as any occupation under the Policy.

57.     As a result of Standard's unreasonable handling of Rodarte LTD claim, its failure to consider all of her medical information, its wrongful termination of her benefits, and fraudulent misrepresentations and omissions, Rodarte has suffered extreme financial difficulty resulting in harm to her credit reputation and consequential damages stemming from her inability to pay her bills.  In addition, Rodarte suffers from extreme mental anguish that has only exacerbated her physical and psychiatric symptoms.

### H.     CAUSES OF ACTION

### BREACH OF CONTRACT

58.     Rodarte incorporates paragraphs 1-57 as if fully set forth herein.

59.     According to the Policy, Standard has the duty to pay monthly LTD benefits to Rodarte as long as she remains disabled under the Policy, is under the care of a physician and submits proof of her disability. Rodarte has met all of these requirements under the Policy.

14

60.    Standard's termination of Rodarte's LTD benefits under the Policy and under the laws of Texas, constitutes a breach of Standard's contract with Rodarte.  As a result of this breach of contract, Rodarte has suffered damages as are described in this petition.

## VIOLATION OF THE PROMPT PAYMENT OF CLAIMS ACT

61.    Rodarte incorporates paragraphs 1-60 as if fully set forth herein.

62.    Standard's acts, omissions, failures and conduct violate Section 542 of the Texas Insurance Code because it failed to pay Rodarte's monthly LTD benefits within the applicable statutory period. In the event it is determined Standard owes Rodarte any monies on her LTD claim, then Standard has automatically violated Section 542 in this case.

## VIOLATIONS OF THE DTPA

63.    Rodarte incorporates paragraphs 1-4862 as if fully set forth herein.

64.    Rodarte is a consumer of goods and services provided by Standard pursuant to the DTPA. Rodarte has met all conditions precedent to bringing this cause of action against Standard.

65.    Specifically, Standard's violations of the DTPA include, without limitation, the following matters: By its acts, omissions failures, and conduct, Standard has violated Sections 17.46(b) (5), (7), (9), (12), and (24) of the DTPA. Standard's violations include, without limitation, (1) its unreasonable investigation and decision on Rodarte's claim, (2) its failure to give Rodarte the benefit of the doubt, (3) its misrepresentations and omissions made in the handling of her claim; and (4) its failure to continue to pay Rodarte's monthly LTD benefits for which liability had become reasonably clear.  This gives Rodarte the right to recover under Section 17.46(b)(2).

66.     Rodarte is entitled to recover under Section 17.46(b)(5) of the DTPA because Standard represented to Rodarte that its policy and Standard's adjusting and investigative services had characteristics or benefits that it did not have.

67.     Rodarte is entitled to recover under Section 17.46(b)(7) of the DTPA because Standard represented its policy and its adjusting and investigative services were of a particular standard, quality, or grade when they were of another.

68.     Rodarte is entitled to recover under Section 17.46(b)(9) of the DTPA because Standard advertised its policy and adjusting and investigative services with the intent not to sell them as advertised.

69.     Rodarte is entitled to recover under Section 17.46(b)(12) of the DTPA because Standard represented to Rodarte that its policy and its adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have.

70.     Rodarte is entitled to recover under Section 17.46(b)(24) of the DTPA because Standard failed to disclose information concerning goods or services which were known at the time of the transaction and such failure to disclose was intended to induce Rodarte into a transaction which Rodarte would not have entered had the information been disclosed.

71.     Rodarte is entitled to recover under Section 17.46(b)(12) and 17.50(a)(2) of the DTPA because Standard has breached an express warranty that Rodarte would continue to receive LTD benefits under the LTD Policy as long as she presented evidence she was "Disabled."

72.     Rodarte is entitled to recover under Section 17.50(a)(3) of the DTPA because Standard's actions are unconscionable in that it took advantage of Rodarte's lack of knowledge, ability and experience to a grossly unfair degree.

73.     Rodarte is entitled to recover under Section 17.50(a)(4) of the DTPA because Standard's conduct, acts, omissions, and failures are unfair practices in the business of insurance.

74.     All of the above-described acts, omissions and failures of Standard are a producing cause of Rodarte's damages as described in the petition. All of the above-described acts, omissions, and failures of Standard were done knowingly and intentionally as those terms are used in the Texas Deceptive Trade Practices Act.

**VIOLATIONS OF SECTION 541 OF THE TEXAS INSURANCE CODE**

75.     Rodarte incorporates paragraphs 1-74 as if fully set forth herein.

76.     Rodarte has satisfied all conditions precedent to bring this cause of action.

77.     By its acts, omissions, failures and conduct, Standard has engaged in unfair and deceptive acts or practices in the business of insurance in violation of section 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition, plus Standard's unreasonable delays in the investigation of Rodarte's claim and its failure to pay monthly LTD benefits for which liability had become reasonably clear.  They further include Standard's failure to give Rodarte the benefit of the doubt. Specifically, as described in Rodarte's factual allegations, Standard is guilty of the following unfair insurance practices:

a.     Engaging in false, misleading and deceptive acts or practices in the business of insurance;

b.     Engaging in unfair claims settlement practices;

c.     Misrepresenting to Rodarte pertinent facts or policy provisions relating to the coverage at issue;

17

d.     Not attempting in good faith to effectuate a prompt, fair and equitable settlement of claims submitted for which liability became reasonably clear;

e.     Failing to affirm or deny coverage of Rodarte's claim without conducting a reasonable investigation with respect to her claim; and

f.     Failing to promptly provide Rodarte with a reasonable explanation of the basis in the policy in relation to the facts or applicable law for the termination of Rodarte's benefits.

78.     Standard also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing.

79.     Rodarte's damages resulted from Standard's conduct.

80.     Standard's acts, omissions, and failures were committed knowingly as that term is described in the Texas Insurance Code.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

81.     Rodarte incorporates paragraphs 1-80 as if fully set forth herein.

82.     By its acts, misrepresentations, omissions, failure and conduct, Standard has breached its common-law duty of good faith and fair dealing by terminating Rodarte's LTD benefits without any reasonable basis and by failing to conduct a fair and complete investigation to determine whether it had a reasonable basis for the termination of her benefits.

83.     Standard has also breached this duty by unreasonably delaying payment of Rodarte's LTD benefits it knew or should have known that it was reasonably clear that Rodarte was "Disabled" under the LTD Policy. These acts, omissions, failures and conduct of Standard are a proximate cause of Rodarte's damages.

18

### I.   WAIVER AND ESTOPPEL

84.   Standard has waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any of its denial letters to Rodarte.

### J.   DAMAGES

85.   The above-described acts, omissions, failures and conduct of Standard has caused Rodarte's damages, which include, without limitation, the amount of her monthly LTD benefits to the present and her future benefits. Rodarte is also entitled to recover consequential damages from Standard's breach of contract, its violations of the DTPA and Insurance Code, and its breach of the duty of good faith and fair dealing. Rodarte is also entitled to recover the amount of her past due LTD benefits plus an 18% per annum penalty on those benefits against Standard as damages under Section 542 of the Texas Insurance Code, plus pre-judgment interest and attorney's fees.

### K.   ADDITIONAL DAMAGES

86.   Standard has also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. Because of Standard's knowing and intentional misconduct, Rodarte is entitled to additional damages as authorized by Section 17.50(b)(1) of the DTPA. Rodarte is further entitled to additional damages authorized by Section 541 of the Texas Insurance Code.

### L.   EXEMPLARY DAMAGES

87.   Standard's breach of its duty of good faith and fair dealing owed to Rodarte was done intentionally, with a conscious indifference to the rights and welfare of Rodarte, and with "malice" as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code.

These violations by Standard are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Rodarte seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Standard for its wrongful conduct and to set an example to deter Standard and others similarly situated from committing similar acts in the future.

### M.   ATTORNEY'S FEES

88.   As a result of Standard's conduct, Rodarte has been forced to retain the undersigned attorney to prosecute this action and has agreed to pay reasonable attorney's fees. Rodarte is entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code, Sections 541 and 542 of the Texas Insurance Code, and Section 17.50 of the DTPA.

### N.   JURY DEMAND

89.   Rodarte asserts her right to a trial by jury, under Texas Constitution Article 1, Section 15, and makes this demand for a jury trial at least 30 days before the date this case is set for trial in accordance with Texas Rule of Civil Procedure 216. Rodarte tenders the fee of $30.00 as required by Texas Government Code Section 51.604.

### O.   PRAYER

Rodarte prays that Standard be cited to appear and answer herein, and that upon trial hereof, that Rodarte have and recover such sums as would reasonably and justly compensate her in accordance with the rules of law and procedure, both as to actual damages, consequential damages, treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, exemplary damages as may be found. In addition, Rodarte requests the award of attorney's fees for the trial and any appeal of this case, for all costs of

court, for prejudgment and post judgment interest as allowed by law, and for any other and

further relief, at law or in equity, to which she may show herself to be justly entitled.

Respectfully Submitted,

**THE LAW OFFICE OF JESSICA TAYLOR**
14100 San Pedro, Suite 602
San Antonio, Texas 78232
(210) 402-4022 (Telephone)
(210) 402-1225 (Fax)


By:   */s/ Jessica Taylor*_____
      JESSICA TAYLOR
      Texas State Bar No. 24013546
      jessica@jtaylorlaw.com
      MANUEL ACUNA-NEELY
      Texas State Bar No. 24091489
      manuel@jtaylorlaw.com



December 27, 2016

ryan.mccomber@figdav.com
(214) 939-2014

## Rule 11 Agreement

***VIA E-MAIL***
Ms. Jessica Taylor
THE LAW OFFICE OF JESSICA TAYLOR
14100 San Pedro, Suite 602
San Antonio, Texas  78232

Re:   C.A. No. 2016C121057; *Guiviam Rodarte v. Standard Insurance Company*, In the 288th Judicial District Court of Bexar County, Texas

Dear Jessica:

This will confirm our agreement to accept service of Plaintiff's Original Petition on behalf of our client Defendant Standard Insurance Company ("Standard") in this matter, effective December 27, 2016.  Accordingly, the deadline for Standard to answer or otherwise respond to Plaintiff's Original Petition is January 23, 2017.

If this letter accurately reflects the substance of our agreement, please sign it in the space provided and return it to me.  This letter is intended as a Rule 11 Agreement under the Texas Rules of Civil Procedure and may be filed with the Court.

Sincerely yours,

Ryan K. McComber

AGREED:

Jessica Taylor
Attorney for Plaintiff

FIGARI + DAVENPORT

ph: 214.939.2000
fx: 214.939.2090
**figdav.com**

Figari + Davenport, LLP
901 Main Street, Suite 3400
Dallas, Texas 75202-3776

FILED
1/18/2017 2:24:51 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Larry Botello Jr.

Case 5:17-cv-00043-DAE   Document 1   Filed 01/23/17   Page 31 of 35

No. 2016-CI-21057

| GUIVIAM RODARTE, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| STANDARD INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | 288TH JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL ANSWER

Defendant Standard Insurance Company ("Standard") files its original answer, and states:

1. **General Denial.** Subject to such admissions and stipulations as may be made at or before time of trial, Standard denies generally and specially the material allegations in Plaintiff's Original Petition, pursuant to TEX. R. CIV. P. 92, and demands strict proof thereof in accordance with the requirements of the laws of this state.

2. **Relief Requested.** Standard requests the following relief:

   (a)    That Plaintiff take nothing by reason of her suit;

   (b)    That Standard be dismissed with its costs; and

   (c)    That Standard have such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

Dated:  January 18, 2017                    Respectfully submitted,


                                            By:  *s/ Ryan K. McComber*
                                                 Ryan K. McComber
                                                 State Bar No. 24041428
                                                 ryan.mccomber@figdav.com
                                                 Nicole H. Muñoz
                                                 State Bar No. 24098153
                                                 nicole.munoz@figdav.com

                                            **FIGARI + DAVENPORT, LLP**
                                            901 Main Street, Suite 3400
                                            Dallas, Texas  75202
                                            Telephone: (214) 939-2000
                                            Facsimile: (214) 939-2090

                                            ATTORNEYS FOR DEFENDANT
                                            STANDARD INSURANCE COMPANY


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served on the following counsel of record via electronic filing on January 18, 2017:

Jessica Taylor                              Via E-File:  Efile.TXCourts.gov
Jessica@jtaylorlaw.com
The Law Office of Jessica Taylor
14100 San Pedro, Suite 602
San Antonio, Texas  78232


                                            *s/ Ryan K. McComber*
                                            Ryan K. McComber

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GUIVIAM RODARTE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. _5:17-cv-43_____ |
| | § | |
| STANDARD INSURANCE COMPANY., | § | |
| | § | |
| Defendant | § | |
| | § | |

## LIST OF PARTIES AND COUNSEL

Defendant Standard Insurance Company files its List of Parties and Counsel as follows:

### Attorney for Plaintiff Guiviam Rodarte

Jessica Taylor
Texas Bar No. 24013546
Jessica@jtaylorlaw.com
The Law Office of Jessica Taylor
14100 San Pedro, Suite 602
San Antonio, Texas 78232
Phone: (210) 402-4022
Fax: (210) 402-1225

**<u>Attorneys for Defendant Standard Insurance Company</u>**

> Ryan K. McComber
> Texas Bar No. 24041428
> ryan.mccomber@figdav.com
> Attorney-in-Charge
> Nicole H. Muñoz
> Texas Bar No. 24098153
> nicole.munoz@figdav.com
> FIGARI + DAVENPORT, LLP
> 901 Main Street, Suite 3400
> Dallas, Texas  75202
> 214-939-2000
> 214-939-2090 – fax

There is a jury demand.

The case is pending and has been removed from the following state court:

288th District Court of Bexar County, Texas
100 Dolorosa
San Antonio, Texas 78205

Respectfully submitted,


By:   s/ Ryan K. McComber
    Ryan K. McComber
    State Bar No. 24041428
    ryan.mccomber@figdav.com
    Nicole H. Muñoz
    Texas Bar No. 24098153
    nicole.munoz@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas  75202
Tel:  (214) 939-2000
Fax:  (214) 939-2090

ATTORNEYS FOR DEFENDANT
STANDARD INSURANCE
COMPANY

## <u>CERTIFICATE OF SERVICE</u>

      I certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system and all others will be notified via cerftified mail, return receipt requested on this 23rd day of January, 2017.


                         s/Ryan K. McComber
                        Ryan K. McComber